UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                      )<br>                                                         )     Crim. No. 13-10238-DPW<br>AZAMAT TAZHAYAKOV,               )<br>                                                         )<br>    Defendant.                                   ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

On July 21, 2014, at the end of a 14-day trial, the jury found the defendant, Azamat Tazhayakov, guilty on both counts in which he was named in the Superseding Indictment, which charged him with conspiracy to obstruct justice, in violation of 18 U.S.C. § 371, and obstruction of justice, in violation of § 1519. The United States submits this memorandum in support of its recommendation that the Court impose a sentence of imprisonment for a period of 48 months, which, in the government's judgment, is "a sentence sufficient, but not greater than necessary," to comply with the purposes of the Sentencing Reform Act. *See* 18 U.S.C. § 3553(a).

The defendant's conduct is summarized in the PSR at ¶¶ 8-17 and is also described in the Government's Opposition to Defendant's Motion for Judgment of Acquittal or New Trial. *See* Docket Entry 565 at 4-7. Rather than review the evidence in detail here, the government highlights four factual points especially material to the Court's determination of a reasonable sentence: (1) Tazhayakov recognized images of Dzhokhar Tsarnaev as one of the Marathon bombing suspects almost immediately after the FBI solicited the public's assistance in identifying the bombers on April 18, 2013; (2) Tazhayakov conspired and affirmatively acted to impede the bombing investigation at the critical moment when the investigation was intensely focused on locating the Tsarnaev brothers and thwarting further acts of violence; (3) Tazhayakov chose not to notify the police when he learned that Tsarnaev was a suspect in the bombing

investigation, although, like his co-defendants, he became aware of – and had it within his power to act upon – that information before the murder of MIT Police Officer Collier and the battle in Watertown; and (4) although he did not accept responsibility for his conduct before his conviction, Tahayakov subsequently agreed to provide truthful testimony at the trial of co-defendants Phillipos and Kadyrbayev and the trial of Dzhokhar Tsarnaev.[1]  After a brief discussion of the facts, the government will present its Guidelines calculations and a discussion of the most salient § 3553(a) factors in this case.

I.   **Facts**

The government incorporates herein by reference the summary of facts set forth in the Government's Opposition to Defendant's Motion for Judgment of Acquittal or New trial.  *See* Docket Entry 565 at 4-7.  Several facts bear emphasis, however.  First, even before the Marathon bombing, Tazhayakov was privy to Tsarnaev's thoughts on the virtue of dying as a martyr and his claim to know how to make a bomb.  Because he possessed this information before the bombing, there can be no doubt that, upon seeing Tsarnaev's image as one of the bombers, Tazhayakov had ample reason to believe that his friend was responsible for the Marathon bombing and capable of further acts of violence.  Rather than heeding the FBI's plea for help from the public, the defendant chose to join his apartment mate in removing evidence from Tsarnaev's dorm room.

Second, the defendant agreed with Kadyrbayev that they should dispose of the backpack containing fireworks *after* the defendant had closely followed coverage of the shootout in Watertown and *after* he became aware that Dzhokhar Tsarnaev remained at large, while Tamerlan had been apprehended.  Trial Exhs. 46, 58, 59 (Tazhayakov sent Kadrybayev a text

---

[1] The defendant in fact testified only at the Phillipos trial.

message, during the Watertown shootout, reading, "I think they caught his brother.") This was hours after the defendant had participated in removing items from Tsarnaev's dorm room – hours during which Tazhayakov closely followed the media coverage of the manhunt and hours during which he had ample opportunity to reflect on his conduct and consider alternatives to compounding his crime with further obstruction of justice. Nonetheless, later that night, the defendant agreed with and acquiesced in the disposal of the backpack taken from Tsarnaev's dorm room.

    Finally, even when questioned by the FBI and afforded an opportunity to come clean, Tazhayakov initially left out key details of his activities on the night of April 18, 2013, and only admitted what he had done after extensive further questioning.

## II.    Advisory Guidelines Calculations

    The PSR correctly calculates the defendant's adjusted offense level to be 42, which is decreased by three levels for his acceptance of responsibility, yielding a total offense level of 39. The defendant objects to the application of both the Terrorism Enhancement under §3A1.4 and the Accessory after the Fact Guideline, §2X3.1. As described below, Probation properly calculated the Guidelines in this case.

    As the PSR notes, the Guideline applicable to conspiracy to obstruct and substantive obstruction counts is U.S.S.G. §2J1.2. Pursuant to § 2J1.2(a), the base offense level ("BOL") is 14. The PSR correctly applies the cross-reference in U.S.S.G. § 2J1.2(c)(1). In cases involving obstruction of an investigation or prosecution for a criminal offense, the Accessory After the Fact Guideline, §2X3.1, applies. Here, "because the offense involved obstruction of an investigation that includes the use of weapons of mass destruction resulting in death for which the offense level is 43, the base offense level is 30." PSR ¶ 30. This Guideline applies

regardless of whether the defendant's actions actually obstructed a federal criminal investigation. Indeed, the cross-reference itself makes clear that it applies in any case that "involved the obstruction of an investigation or prosecution of a criminal offense." The Guidelines do not indicate that the defendant must be successful in obstructing the investigation for this cross-reference to apply. To the contrary, the government need only prove that the defendant intended or attempted to obstruct an investigation. *See United States v. Conley*, 186 F.3d 7, 24-25 (1st Cir. 1999) (finding cross-reference to 2X3.1 "is intended to provide an enhanced offense level for the crime of obstruction of justice when the obstruction is in respect to a particularly serious offense" and evidence that the defendant attempted to obstruct justice is sufficient "to trigger the cross-referencing provisions of the guidelines."); *accord United States v. Giovanelli*, 464 F.3d 346, (2d Cir. 2006) (applying 2X3.1 Guideline under an endeavoring to obstruct justice theory in a prosecution for violation of 18 U.S.C. §1503). In convicting the defendant, the jury clearly found that the defendant conspired to obstruct justice and engaged in activities with the intent to impede, influence, and obstruct the bombing investigation. Accordingly, at a minimum, the Court should determine that the defendant's adjusted offense level is 30 (97-121).

The PSR also correctly applies the terrorism enhancement under §3A1.4. That Guideline calls for a 12-level increase in the offense level and a criminal history category of VI "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a). The Application Notes to the Guideline explain that "an offense that involved . . . obstructing an investigation of a federal crime of terrorism . . . shall be considered to have involved, or to have been intended to promote, that federal crime of terrorism." *Id*. at App. Note 2; *see United States v. Ashqar*, 582 F.3d 819, 825-26 (7th Cir. 2009) (affirming application of enhancement based on defendant's refusal to testify because defendant intended to

obstruct an investigation into a federal crime of terrorism); *but see United States v. Bihieri*, 356 F. Supp. 2d 589, 598 (E.D. Va. 2005) (holding that application of § 3A1.4 requires a finding of actual obstruction); and *United States v. Benkahla*, 530 F.3d 300, 313 (4th Cir. 2008) (upholding application of § 3A1.4 enhancement where evidence established defendant actually obstructed a terrorism investigation). The defendant's conduct was intended to obstruct a federal terrorism investigation. His efforts succeeded in interfering and influencing the investigation in that they delayed the identification, acquisition, and analysis of critical evidence and jeopardized the admissibility at trial of critical evidence against Tsarnaev. Additionally, the defendant's actions caused the expenditure of substantial governmental resources. Applying the terrorism enhancement results in an adjusted offense level of 42 and a criminal history category of VI.

This offense level is reduced by three levels due to the defendant's acceptance of responsibility, resulting in a total offense level of 39 and Guideline Sentencing Range of 360-life for a person with criminal history category of VI. Tazhayakov's sentencing range is, however, statutorily capped at 25 years (300 months) based upon the statutory maximum penalties for Counts One and Two. While the government contends that the terrorism enhancement applies in this case, many of the factors necessitating the increase in criminal history category are not applicable to Tazhayakov. In enacting the terrorism enhancement, the Sentencing Commission recognized that terrorism offenses are more difficult to deter and a terrorist is more likely to be a repeat offender. *United States v. Hammoud*, 2012 WL 2354639, *6 (4th Cir. 2012) (unpub.). Consequently, the Sentencing Commission chose to create a "uniform criminal history category for all terrorists under §3A1.4(b), because even terrorists with no prior criminal behavior are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation." *Id.* (omitting citations). Because Tazhayakov's crimes, while serious,

are unlikely to be repeated and did not include any crimes of violence, the Government believes that a consideration of the factors specified at 18 U.S.C. §3553(a) demonstrates that a sentence of 48 months years is reasonable.

### III.   Factors To Be Considered Under 18 U.S.C. § 3553(a)

The most salient § 3553(a) factors here are "the nature and circumstances of the offense and the history and characteristics of the defendant;" and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense; . . . [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(1) and (2)(A) and (D). These factors present a combination of aggravating and mitigating factors and, in the aggregate, call for a serious sentence.

### A.   Deterrence of Criminal Conduct

The obstruction of any legitimate criminal investigation is a serious crime. *See Brogan v. United* States, 522 U.S. 398, 405 (1998). Obstruction of a terrorism investigation is categorically more serious than most other obstruction crimes. This is so because terrorist crimes pose tremendous risks to public safety and, as was the case with the Marathon bombers, that risk continues beyond the initial crime. Thus, among the most important functions served by sentencing this defendant is the deterrent message the sentence will convey to those who might consider impeding a law enforcement investigation into ongoing conduct that presents a public danger . *See United States v. Flores-Machicote*, 706 F.3d 16, 23 (1st Cir. 2013) ("Deterrence is widely recognized as an important factor in the sentencing calculus.") (*citing* 18 U.S.C. § 3553(a)(2)(B)). Deterrence is "particularly important in the area of white collar crime." *United States v. Prosperi,* 686 F.3d 32, 47 (1st Cir. 2012) (citations omitted). Few cases better illustrate the importance of deterrence than this one. The law enforcement imperative of identifying the

6

bombers and gathering evidence of their crimes as quickly as possible cannot be overstated.  The sentence imposed by the Court should send a clear and unequivocal message:  obstructing a federal criminal investigation will be be punished severely; obstructing a terrorism investigation more so.

**B.      Nature and Circumstances of the Offense**

While the Court is well aware of the nature and circumstances of the offenses here, certain aspects of the defendant's conduct bear emphasis.  The details of the defendant's conduct demonstrate that his crime was especially serious.  He sought to obstruct a terrorism investigation in its critical, embryonic phase.  He did so when the terrorist was still at large.  He compounded his obstructive conduct even after learning of the shootout in Watertown – that is, even after he had abundant reason to believe that Tsarnaev was bent on further violence.  And he did so in the face of direct pleas from law enforcement for information concerning the bombers.  The investigation into the Boston Marathon bombings is in a category of investigations in which the evil of impeding the work of the police should be universally recognized.

Finally, as the government has argued with regard to Tazhayakov's co-defendants, although there is no legal obligation of hue and cry, the defendant's decision not to call the police bespeaks a failure to recognize a fundamental moral principle – if one has information that may be useful in preventing harm to fellow citizens, one has a moral duty to report it.  Before Tsarnaev murdered Officer Collier, the defendant knew his friend Tsarnaev was the fugitive bomber.  Any reasonable, decent person possessed of the information the defendant had would have recognized that immediate apprehension of Tsarnaev was a public-safety imperative.  Had Tazhayakov done so, then Tsarnaev's identity as the bomber would have been known to police

before the murder of MIT Police Officer Collier at approximately 10:30 p.m. and the subsequent violent confrontation in Watertown.[2]

### C. History and Characteristics of the Defendant

Unlike many defendants who appear before this Court, the defendant grew up in a stable family and enjoyed the privileges of an upper-middle class upbringing. *See* PSR at ¶ 44. He had benefits of a fine education. Id. at ¶¶ 64-65. This background is both an aggravating factor, because the defendant's upbringing doubtless made clear to him the wrongfulness of his conduct, and a mitigating factor, because it suggests little likelihood of recidivism, especially when viewed in light of the defendant's apparent history of abiding by the law.

As the government has stated with regard to Tazhayakov's co-defendants, the defendant's youth does not provide a basis for a sentence below the advisory GSR. The advisory Guidelines do not treat age as a mitigating factor. *See* U.S.S.G. § 5H1.1. This case illustrates the wisdom of the Sentencing Commission's view of the irrelevance of age in most cases. Society reasonably expects all adults – young and old alike – to refrain from obstruction of a criminal investigation. Many of those with information material to the Boston bombing investigation, as well as the suspected bombers themselves, are young.

Finally, evaluation of the defendant's personal characteristics should include recognition that the defendant, upon conviction, chose to provide information to the government concerning his crimes of conviction and concerning Dzhokhar Tsarnaev. The parties entered an agreement (copy attached) whereby the defendant agreed to cooperate fully with the government and provide complete and truthful information and testimony, if called upon to do so. The

---

[2] The government does not ask the Court to find that a call by Tazhayakov to the police would have resulted in earlier apprehension of Tsarnaev. The moral obligation at issue is rooted in the possibility that calling the police *could* have made a difference, regardless of how one assesses the likelihood that it would in fact have made a difference

government, in turn, agreed to bring the full nature, extent and value of the defendant's assistance to the Court's attention at the time of the sentencing. While this agreement does not contemplate that the government will seek a departure from the applicable Sentencing Guidelines, § 5K1.1 nonetheless provides a useful framework for assessing the defendant's cooperation as a § 3553(a) factor. Section 5K1.1 directs the Court to consider, among other things, the Court's own evaluation of the significance and usefulness of the defendant's testimony, taking into consideration the government's evaluation of the assistance; the truthfulness and completeness of the defendant's testimony; and the timeliness of the defendant's assistance.

As the Court observed, the defendant's testimony at the Phillipos trial provided the jury useful information, especially with regard to Phillipos's activities before, during, and after the three men went to Tsarnaev's dorm room on the night of April 18, 2013. In the government's assessment, the defendant testified truthfully and completely. The government views his testimony as valuable and especially helpful to the jury's assessment of the claim that Phillipos was too inebriated to later recall the events of that night. The government also notes that Kadyrbayev chose to plead guilty after the government disclosed the fact of Tazhayakov's cooperation. Finally, although the government chose not to call Tazhayakov as a witness at the Tsarnaev trial, it is noteworthy that he was willing to testify and met with the government numerous times in preparation for his testimony. Tazhayakov's cooperation cannot be said to be timely in the sense that he did not agree to cooperate until more than a year after indictment. On the other hand, it was timely with respect to his utility and potential utility in other proceedings.

**D.      Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law, to Provide Just Punishment for the Offense**

For the reasons already discussed, the defendant's crimes were serious and warrant a serious sentence. A sentence of 48 months will reflect the seriousness of the offense and promote respect for the law, while recognizing that the crime was nonviolent and that the defendant's assistance and willingness to assist in the prosecution of others merits leniency relative to his co-defendants. Thus, notwithstanding the seriousness of the defendant's crimes and the need for a sentence that provides general deterrence and promotes respect for the law, a sentence of 48 months is reasonable.

## Conclusion

For the foregoing reasons, the Court should sentence the defendant to imprisonment for a period of 48 months, to be followed by a period of supervised release of two years.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:   /s/ *John A. Capin*
        _____
        JOHN A. CAPIN
        B. STEPHANIE SIEGMANN
        Assistant U.S. Attorneys

<u>Certificate of Service</u>

I hereby certify that I caused the above document to be served on counsel of record for the defendant by e-mail on this 29th day of May 2015.

/s/ *B. Stephanie Siegmann*
_____
B. STEPHANIE SIEGMANN